[No. 21861-5-II.   Division Two.   May 28, 1999.]

WAGNER DEVELOPMENT, INC., *Appellant*, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *Respondent.*

*Jeffrey G. Poole* of *Jeffrey G. Poole, P.C.*, for appellant.
*William Henry Broughton* of *Broughton & Associates, Inc., P.S.*, for respondent.

SEINFELD, J. — Wagner Development, Inc. appeals from a summary judgment dismissing its action for wrongful attachment. Although the attaching party later prevailed on the issue specified in the writ of attachment—breach of contract—it did not obtain a favorable overall judgment on the related claims before the trial court. Rather, Wagner obtained a net monetary recovery on its related lien foreclosure action. Finding this fact determinative, we reverse.

## FACTS[1]

Eileen Hansen, a property developer, contracted with Pape & Sons Construction, Inc., for site preparation for a residential development in Poulsbo, Washington. Pape awarded a subcontract for a portion of the work to Wagner. But Wagner left the project after it became involved with Pape in a dispute about the work. Pape then completed the work using other subcontractors, but the dispute resulted in additional costs to Hansen and delays to the project schedule.

Meanwhile, Wagner filed a lien against the property and in April 1991, brought an action for lien foreclosure based upon its claim that it was not paid for its services. In May 1991, Hansen sued Pape for various contract related damages. Among her contentions was a claim that Pape breached its contract to her by allowing liens that Wagner

---

[1]This summary of facts contains only those facts considered by the trial court at the time it ruled on the motion for summary judgment. Although Wagner attempted to supplement the record on its motion for reconsideration, the trial court refused to consider the additional materials. Because our review is limited to the record before the trial court, *State v. Bugai*, 30 Wn. App. 156, 158, 632 P.2d 917 (1981), and because we conclude that the trial court did not abuse its discretion in declining to consider Wagner's proffered supplementation, *see* Section II below, we also do not consider these additional materials.

and a second subcontractor had filed against the property to remain. Hansen also alleged that Pape was liable for the legal expenses she had and would incur defending against Wagner's lien foreclosure action.

Pape's answer included a counterclaim and a third party complaint against Wagner. The third party complaint alleged that Wagner breached its contract with Pape by failing to perform its work properly and by filing a wrongful lien against the subject property. Pape sought contract damages in excess of $200,000. Wagner counterclaimed for breach of contract against Pape.

In July 1993, Pape filed an affidavit for attachment of Wagner's personal property. The affidavit caption contained the cause numbers for Hansen's breach of contract action (92-2-01994-1) and for Wagner's lien foreclosure action (91-2-00741-3). The affidavit stated that "the purpose of the cause of action is to recover damages for breach of contract." The trial court issued the writ in September; Fidelity and Deposit Company of Maryland posted the required attachment bond on behalf of Pape. All documents contained both cause numbers.

A year later, the trial court consolidated Hansen's breach of contract action with Wagner's foreclosure action. Hansen and Pape settled; thus, only the claims between Wagner and Pape were at issue at trial.

The jury found that Wagner had breached its contract with Pape and awarded Pape damages of $13,741; it did not award Wagner any damages on its counterclaim for breach of contract. But the trial court awarded Wagner $17,237.43 on the lien foreclosure claim and $25,000 in attorney fees. After offsetting Pape's award against Wagner's and adding in interest and attorney fees, the trial court entered a $35,850.83 judgment for Wagner.[2] The trial court then granted Wagner's motion to quash the writ of attachment and release the funds.

---

[2]Pape appealed the judgment favoring Wagner on the lien foreclosure action. *Wagner Development, Inc. v. Pape & Sons Constr., Inc. & Eileen Hansen*, No. 20451-7-II (Wash. Ct. App. May 28, 1999). We affirmed the lien foreclosure but reversed in part because, inter alia, the trial court overstated the judgment in Wag-

Wagner subsequently filed this action for wrongful attachment against Fidelity. Both parties moved for summary judgment. The superior court granted Fidelity's motion and dismissed Wagner's claims. It also ordered the release of the attachment bond.

Wagner moved for reconsideration, attaching several pleadings and rulings from the underlying breach of contract and lien foreclosure actions. Wagner argued for the first time that the court should have considered this evidence in ruling on the motions for summary judgment and also argued for the first time that a ruling in the underlying contract case, providing that Wagner could file an action for wrongful garnishment, should act as the law of the parties' case and bar further consideration of the issue on collateral estoppel grounds. The court refused to consider the attachments to the reconsideration motion and denied the motion.

Wagner appeals the trial court's orders denying its motions for summary judgment and for reconsideration. It argues that because Pape recovered nothing following trial, the attachment was wrongful; that Pape is collaterally estopped from contesting the wrongfulness of its conduct; and that the law of the case doctrine bars Pape's claim of wrongfulness.

## ANALYSIS

■ In reviewing a summary judgment, we engage in the same analysis as the trial court: "a motion for summary judgment is properly granted if the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sneed v. Barna*, 80 Wn. App. 843, 847, 912 P.2d 1035 (1996). "Summary judgment is appropriate if reasonable persons could reach but one conclusion." *Plotkin v. State*, 64 Wn. App. 373, 377, 826 P.2d 221 (1992) (citing *Carlson v. Gibraltar Sav.*, 50 Wn. App. 424, 428, 749 P.2d

---

ner's favor. Under the corrected judgment, Wagner should prevail by approximately $2,402.

697 (1988)). We consider the facts in the light most favorable to the nonmoving party. *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 62, 847 P.2d 440 (1993); *Sneed*, 80 Wn. App. at 847; CR 56(c).

## I. WRONGFUL ATTACHMENT

Attachment and prejudgment garnishment are procedures for seizing a defendant's property before judgment is entered in a pending action. 1A KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 51.1, at 397 (1997) (WASH. PRAC.). These prejudgment remedies are used (1) to protect against a defendant's disposing of property before a plaintiff can obtain a judgment and execute against the property, (2) to obtain security for any judgment that may be obtained, or (3) to obtain jurisdiction quasi in rem when personal jurisdiction cannot be obtained over a defendant. *Id.* Attachment is directed against property of the defendant which is in his possession or control, while the object of garnishment is to reach an indebtedness due the defendant by a third person, or property in the possession of a third person that belongs to the defendant. 7 C.J.S. *Attachment* § 2, at 227 (1980).

In Washington, attachment proceedings are governed by RCW 6.25. Before a writ of attachment can issue, the plaintiff must execute and file with the court clerk a surety bond. RCW 6.25.080(1). A defendant who suffers actual damages as a result of a wrongful attachment may sue on the bond or may sue the plaintiff or the sheriff in a common law action. 1A WASH. PRAC. § 51.3, at 400. The best choice of remedy may be an action on the bond because RCW 6.25.100, which governs such actions, allows the recovery of exemplary damages and because an action on the bond permits flexibility in choice of parties. Such an action may be brought against the surety and the plaintiff, the plaintiff alone, or the surety alone. 1A WASH. PRAC. § 51.3, at 401.

A defendant bringing an action on the attachment bond for actual damages and attorney fees must prove

"that the attachment was wrongfully sued out." RCW 6.25.100.[3] The defendant may conclusively prove wrongful attachment by showing that it obtained a final judgment in its favor in the underlying action. "Nothing more need be proved to establish liability under . . . an attachment bond . . . ." 1A WASH. PRAC. § 51.3, at 399; *see also Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 267 (4th Cir. 1959) (as a general rule, no cause of action for wrongful attachment will accrue if the plaintiff prevails); *but see* 7 C.J.S. § 395, at 741 (judgment for plaintiff on merits of cause of action supporting attachment is not conclusive that attachment was not wrongful). If the plaintiff did not obtain a judgment in its favor, the court must discharge the attachment. 1A WASH. PRAC. § 51.36, at 429. Thus, a dissolution of the attachment on the merits is conclusive proof that the writ was wrongfully obtained. 7 C.J.S. § 395, at 740; *Gale v. Transamerica Corp.*, 65 Ill. App. 3d 553, 556, 382 N.E.2d 412, 415, 22 Ill. Dec. 92, 95 (1978).

In the present case, Pape sought a writ of attachment on the basis that its claim was for breach of contract. One of the grounds for issuing a writ of attachment is that the object for which the action is brought is to recover on a contract. RCW 6.25.030(10). Pape recovered approximately $13,000 on its breach of contract claim against Wagner, and Wagner recovered nothing on its breach of contract counterclaim.

But the trial court found that Wagner was entitled to approximately $17,000 in the lien foreclosure action that arose out of the same contractual obligations and was consolidated with the contract action before trial. Further, Pape pleaded the lien foreclosure issue in its contract cause of action and identified it by cause number on all the at-

---

[3]An earlier version of the attachment statute also required proof that there was no reasonable cause to believe that the ground on which the attachment was issued was true. *See Newby v. U.S. Fidelity & Guar. Co.*, 49 Wn.2d 843, 845, 307 P.2d 275 (1957). The Legislature removed the "no reasonable cause" requirement in 1987 to make the bases for actions on bonds the same for attachment and garnishment and to remove the substantial hurdle to defendant's recovery for wrongful attachment. 1A WASH. PRAC. § 51.3 at 399-400.

tachment pleadings and the order of attachment. After entering judgment for Wagner, the trial court ordered the writ of attachment quashed and the funds released to Wagner's attorneys. Thus, Wagner's contention that Pape did not prevail on its contract claim because it recovered nothing and because the writ of attachment was quashed has merit.[4]

Fidelity, citing *Brown v. Peoples National Bank*, 39 Wn.2d 776, 238 P.2d 1191 (1951), argues that Pape did recover on its breach of contract claim and that Wagner's lien foreclosure recovery is irrelevant because the writ of attachment was based on the contract action. In *Brown*, the Bank submitted an affidavit in support of its motion for a prejudgment writ of attachment. The affidavit set forth two grounds for issuance of the writ. One was that the defendants were about to dispose of their property, and the other was that the action was brought to recover on a contract.

The court entered a judgment in favor of the Bank. Nonetheless, the Browns filed a complaint for wrongful attachment, alleging that it was untrue that they had planned to dispose of their property. The *Brown* trial court agreed, but dismissed the complaint for wrongful attachment because the other ground for issuing the writ—that the action was brought to recover on a contract—was valid. 39 Wn.2d at 780.

Fidelity argues that because Pape's writ of attachment also was based on breach of contract, Wagner's action for wrongful attachment must fail. But a fact key to the *Brown* decision is the Bank's receipt of a judgment in its favor. Despite Fidelity's arguments to the contrary, the court entered a judgment in the consolidated action in favor of Wagner. What we must consider here is whether Pape's award of contract damages, and the offset of that award against the final judgment in this case, somehow alters the significance of that judgment.

---

[4]On appeal, we reduced the lien amount to $16,143.43. *Wagner Development, Inc. v. Pape & Sons Constr., Inc. & Eileen Hansen*, No. 20451-7-II (Wash. Ct. App. May 28, 1999).

We find no authority precisely on point but *Huzzy v. Culbert Construction Co.*, 5 Wn. App. 581, 489 P.2d 749 (1971), contains a brief policy discussion that is instructive. *Huzzy* involves a garnishment action, but because the attachment statute now contains the same requirements as the garnishment statute, we find its analysis applicable.

Plaintiff Huzzy, a property owner, brought a breach of contract action against Culbert, a contractor, for breach of contract. In addition, Huzzy "procured writs of garnishment and impounded Culbert's bank accounts." *Huzzy*, 5 Wn. App. at 582. Culbert cross-complained for breach of contract. The trial court found for Culbert and entered judgment for contract damages and wrongful garnishment. Huzzy then appealed, arguing that the garnishment was not wrongful because the trial court allowed him setoffs "in excess of the funds impounded by the garnishment." *Id.* at 584.

The *Huzzy* court concluded that the allowance of offsets did not cure the wrongfulness of the garnishment. It stated:

> The extraordinary advantage afforded a creditor by the garnishment statutes is a harsh remedy. Huzzy's right to impound Culbert's bank accounts before judgment was conditioned upon his sworn statement that Culbert was indebted to him and that the debt was just, due and unpaid. . . . A garnishment is wrongful if the plaintiff does not recover a judgment against the defendant. And even though the primary action be dismissed *without* prejudice, the garnishment is nevertheless wrongful. Therefore, the allowance of offsets does not cure the "wrongfulness" of Huzzy's garnishment. The significant considerations are that Culbert was not in default, that Huzzy breached the contract by his precipitous and unilateral termination, and that Huzzy failed to recover a judgment against Culbert.

*Huzzy*, 5 Wn. App. at 584-85 (emphasis added) (citations omitted).

Thus, *Huzzy* shows that a court's reduction of a defendant's damages by an offset is not determinative where the defendant obtains a judgment in its favor. If a plaintiff

obtains a writ of attachment and does not recover a judgment against the defendant, *Huzzy* would hold that the attachment is wrongful regardless of the offset allowed the plaintiff.[5]

Here, Wagner clearly obtained a judgment in its favor. When Pape decided to use the harsh prejudgment attachment statute, it was aware of Wagner's lien claim, which arose out of the same factual context as Pape's breach of contract action. Hansen identified Wagner's claim in her complaint and Pape, in turn, referenced it in its third party complaint. Pape further identified that cause of action by cause number when it sought the writ of attachment. Although Pape's attachment pleadings mention only the breach of contract claim as support for the attachment, this fact lacks significance because the purpose of the attachment was to protect Pape's ability to enforce a judgment, not to protect it against Wagner's claim.

Finally, we note that the issue raised in the lien foreclosure action, after the Hansen-Pape settlement, was similar to the type of issue covered in the rule governing compulsory counterclaims. *See* CR 13.[6] Here, the lien foreclosure claim was the subject of another pending action at the time Pape filed its breach of contract claim and thus it was not a mandatory claim. But because the lien claim arose out of the transaction that was the subject matter of Pape's claim—the contract between Pape and Wagner to develop Hansen's property—the trial court should have considered it in determining whether Pape prevailed on its contract claim and whether Pape's attachment was wrongful.

---

[5]Neither party here compares the amount of the plaintiff's recovery with the amount attached, as did the plaintiff in *Huzzy*. Contrary to the argument made in *Huzzy*, an attachment is not proven wrongful because it is sued out for a greater amount than is actually due. 7 C.J.S. § 395, at 740.

[6]"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." CR 13(a).

Consequently, because Pape failed to obtain an affirmative judgment in its favor, its attachment was wrongful.

## II. WAGNER'S MOTION FOR RECONSIDERATION

Wagner claims the trial court erred in refusing to consider the additional documents it filed in support of its motion for reconsideration. It contends that the trial court's ruling contained in those documents collaterally estopped Pape from challenging Wagner's cause of action for wrongful attachment.

Wagner based its collateral estoppel argument on a decision that the trial court issued in denying Pape's motion to release Fidelity's bond. Wagner contended that because Pape did not appeal this decision, it served as the law of the parties' case and the issue of whether Wagner had a cause of action was no longer subject to debate. The superior court denied the motion for reconsideration without considering these theories and the attachments to that motion because they were not before the court when it entered its summary judgment order in favor of Fidelity.

■■ Motions for reconsideration are addressed to the sound discretion of the trial court; a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of that discretion. *Perry v. Hamilton*, 51 Wn. App. 936, 938, 756 P.2d 150 (1988). A trial court abuses its discretion when it exercises it in a manifestly unreasonable manner or bases it upon untenable grounds or reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Wagner filed its motion for reconsideration pursuant to CR 59 and CR 60. Under CR 59(a)(4), reconsideration is warranted if the moving party presents new and material evidence that it could not have discovered and produced at trial. Under CR 60(b)(3), a judgment may be vacated if a party produces new evidence that it could not have discovered using due diligence in time to move for a new trial.

■ Both a trial and a summary judgment hearing afford the parties ample opportunity to present evidence. If the evidence was available but not offered until after that opportunity passes, the parties are not entitled to another opportunity to submit that evidence. *Meridian Minerals Co. v. King County*, 61 Wn. App. 195, 203, 810 P.2d 31 (1991); *Adams v. Western Host, Inc.*, 55 Wn. App. 601, 608, 779 P.2d 281 (1989) ("The realization that [the] first declaration was insufficient does not qualify the second declaration as newly discovered evidence.").

Here, the additional evidence Wagner presented to the court in its motion for reconsideration was available when the parties filed their motions for summary judgment. The trial court did not abuse its discretion in rejecting the motion for reconsideration.

### III. THE RELEASE OF THE ATTACHMENT BOND

■ As part of its decision granting Fidelity summary judgment, the trial court directed the clerk to release the attachment bond. Wagner did not specifically assign error to this ruling. Fidelity contends that because of Wagner's failure to assign error or to stay the bond's release, recovery on the bond is no longer possible because there is no longer a bond upon which to base recovery.

The major support for Fidelity's argument is this court's discussion of the exoneration of a preliminary injunction bond in *Cedar-Al Products, Inc. v. Chamberlain*, 49 Wn. App. 763, 748 P.2d 235 (1987). There, after the trial court granted plaintiff's motion for a preliminary injunction, plaintiff posted the required bond. The trial court subsequently granted plaintiff a permanent injunction and entered a separate order exonerating the preliminary injunction bond.

The defendants appealed the order granting a permanent injunction but did not appeal, or assign error to, the order exonerating the preliminary injunction bond. *Cedar-Al Prods.*, 49 Wn. App. at 764. After the Court of Appeals reversed the injunction, the defendants moved in

the trial court for an order enforcing the bond. *Cedar-Al Prods.*, 49 Wn. App. at 764-65. The trial court denied the motion, and the defendants appealed. *Id.* at 765.

This court affirmed after holding that a temporary injunction bond that has been previously exonerated by an unappealed order of the trial court is not implicitly reinstated by a reversal of the order granting a permanent injunction. *Cedar-Al Prods.*, 49 Wn. App. at 765. The court adopted the reasoning of the Ninth Circuit Court of Appeals in *Buddy Systems, Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164 (9th Cir. 1976), and quoted from the case as follows:

> The exoneration was not implicitly reversed by the reversal of the permanent injunction on direct appeal. We recognize that such a reversal provides a basis for finding the preliminary injunction to have been wrongfully issued. However, wrongful issuance is merely one element of a cause of action on an injunction bond. The bond is still needed. There also must be damages shown.

*Buddy Sys.*, 545 F.2d at 1169 n.10 (citations omitted), *cited in Cedar-Al Prods.*, 49 Wn. App. at 766.

The Court of Appeals reasoned that any other decision would be grossly unfair to the surety who furnishes a bond and is no longer a party to the case. If reversal of a preliminary injunction automatically reactivated injunction bonds that had been exonerated, sureties would be uncertain as to the termination of their liability. Having failed to appeal the bond exoneration order, the defendants were not entitled to enforce the preliminary injunction bond. *Cedar-Al Prods.*, 49 Wn. App. at 767.

Although Fidelity sees *Cedar-Al Products* as dispositive, there are important procedural differences between it and the present case. First, this case concerns an action brought on the bond before the bond's release. Thus, a bond did exist when Wagner filed its complaint for wrongful attachment. Second, Fidelity is the opposing party in the wrong-

ful attachment action, so there is no concern about "gross unfairness" to a surety uncertain about termination of its liability. Third, the order releasing the bond was part of the summary judgment order that Wagner appeals. There was no separate order of exoneration. While Wagner does not specifically assign error to the bond's release, it does assign error to the overall ruling containing the release order.

*Buddy Systems* also contains important procedural distinctions. There, the trial court made the preliminary injunction permanent and ordered the exoneration of the security at the same time. The defendant objected to the exoneration of the security before the time for appeal expired. When the court gave the defendant an opportunity to submit authority supporting its objection, the defendant failed to make a submission, so the final judgment ordered the bond exonerated. *Buddy Sys.*, 545 F.2d at 1166.

On appeal, the Ninth Circuit reversed the trial court's judgment regarding the injunction. The defendant did not challenge the exoneration of the bond, however, so the court did not reach that issue on appeal. After that appeal, the defendant filed suit to recover damages for the wrongful issuance of a preliminary injunction. The defendant also moved to compel plaintiff to redeposit the security. The motion was denied and the trial proceeded. The Ninth Circuit reversed the judgment awarding the defendant damages after finding that there was no bond upon which an action could be brought. *Buddy Sys.*, 545 F.2d at 1166.

Thus, in both *Buddy Systems* and *Cedar-Al Products*, the action was brought upon the security after its exoneration. Wagner brought its action for wrongful attachment on the bond before its release. Wagner's appeal of the summary judgment order is sufficient to preserve an appeal of the release of the attachment bond.

We reverse the trial court's summary judgment in favor of Fidelity and its denial of the partial summary judgment in favor of Wagner and remand for further proceedings to determine the amount of Wagner's damages. We also award

Wagner attorney fees and costs on appeal under RCW 6.25.100.

BRIDGEWATER, C.J., and HUNT, J., concur.

Review denied at 139 Wn.2d 1005 (1999).