# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| OLAF ERIKSEN, an individual,<br><br>     Appellant-Cross Respondent,<br><br>v.<br><br>ECX, LLC, a limited liability company organized under the laws of the State of Washington, d/b/a ecigExpress;<br>ECX IMPORTS, LLC, a limited liability company organized under the laws of the State of Washington;<br>LG CHEM, Ltd., a South Korean company, and DOES 1-100, inclusive,<br><br>     Respondent-Cross Appellant. | No. 79473-6-I (consolidated with No. 79595-3-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — Olaf Eriksen appeals and ECX, LLC cross-appeals the trial court's dismissal of all claims against LG Chem, Ltd., a South Korean company, for lack of personal jurisdiction. Eriksen and ECX also challenge the denial of their requests for reconsideration and for jurisdictional discovery. We affirm.

## FACTS

On November 7, 2015, Olaf Eriksen purchased an "Efest" lithium-ion battery for his e-cigarette from ECX, LLC (d/b/a ecigExpress) in Seattle. On April 11, 2016, Eriksen took a break from his job as a shipyard welder to smoke his e-cigarette. On his way back to work from his break, Eriksen put the e-cigarette in his front right pant

Citations and pin cites are based on the Westlaw online version of the cited material.

pocket. The e-cigarette's battery exploded in his pocket. He caught on fire and sustained third degree burns to his inner right thigh. Eriksen sued ECX, LLC, and its distributor ECX Imports, LLC, alleging product liability and negligence.[1]

After conducting a CT scan of the battery, Eriksen determined that LG Chem, Ltd. (LG) manufactured it. LG is a South Korean company with its principal place of business in Seoul, South Korea. It manufactures "18650" lithium-ion power cells. The battery that burned Eriksen was stamped "IMR 18650 3.7V 2900mAh." LG does not sell IMR 18650 3.7V 2900mAh batteries but acknowledges it could have sold an 18650 battery to a buyer who relabeled it as an "Efest" battery. The parties have called the buying, relabeling, and reselling products process "rewrapping."

With this information, Eriksen filed a second amended complaint that asserted claims against LG. LG asked the trial court to dismiss the claims against it for lack of personal jurisdiction relying on Court Rule 12(b)(2). LG argued it did not have a physical presence in, purposefully direct business to, or maintain purposeful minimum contacts in Washington State. LG noted it has never registered to conduct business nor has it owned or leased property in Washington State. It never had an office, telephone number, mailing address, or bank account in Washington State. LG also argued it did not have a relationship with ECX or Efest, and did not authorize Efest or any other manufacturer, wholesaler, distributor, or retailer to rewrap and sell its batteries. Eriksen asked the court to allow him to amend his complaint again to assert additional

---

[1] We refer to ECX, LLC and ECX Imports, LLC collectively as ECX.

jurisdictional facts showing minimum contacts for personal jurisdiction. The trial court granted Eriksen's request.

Eriksen then filed a third amended complaint and ECX asserted a cross claim against LG. Eriksen alleged LG had continuing contacts with King County and Washington State "by manufacturing, distributing, and/or selling goods with the reasonable expectation that they will be used" there. Eriksen asserted the trial court had specific personal jurisdiction because LG "purposefully availed itself of the privileges and benefits of doing business in Washington," has sufficient minimum contacts with Washington State, placed the battery into the stream of commerce with the expectation that Washington State residents would purchase it, and maintained an active "website where it can exchange information with Washington residents."

LG asked the court to dismiss Eriksen's and ECX's claims against it. LG made the same arguments as before and supported its position with a declaration from LG's Senior Manager Joon Young Shin. Shin stated LG has never conducted business in Washington State, and that if the Efest battery was in fact an LG battery, LG did not authorize its rewrapping. LG argued Eriksen failed to allege sufficient facts to show a prima facie case of personal jurisdiction. It argued Eriksen had not alleged a sufficient connection between his claims, LG, and the State of Washington, and that Washington State courts cannot exercise jurisdiction based on the conduct of the third party that rewrapped LG's battery. LG also argued it maintains its website from outside of Washington State, that Eriksen did not allege he consulted the website, and that the website includes a warning not to use LG's batteries with e-cigarettes.

3

Eriksen and ECX opposed LG's request. In the alternative, they asked for additional time to conduct jurisdictional discovery. Eriksen noted LG was involved in eight cases in Washington State where parties alleged LG purposely placed defective batteries into the stream of commerce.

During the hearing on the LG's dismissal request, ECX mentioned it maintained an inventory of LG batteries.

> [W]ith respect to this limited discovery is my client's in kind of a unique situation, in that we do have an inventory system that's still able to bring up product types.
>
> THE COURT: Counsel, I'm uncomfortable hearing the things that are outside the record.
>
> MR. JORDAN: Sure.
>
> THE COURT: And so, hearing about your inventory system, I think, would be outside of the record.

The trial court excluded discussion of the inventory because that information was outside the record.

On October 26, 2018, the trial court granted LG's request to dismiss all claims against it due to lack of personal jurisdiction. It determined Eriksen failed to sufficiently allege LG is "'at home' in Washington," LG "purposefully directed activities toward Washington," and Eriksen's injuries arose out of LG's forum related activities. LG lacked sufficient contacts with Washington State to satisfy specific jurisdiction. The trial court also determined additional jurisdictional discovery would be untimely and inappropriate.

4

Eriksen then asked the trial court to reconsider its decision, claiming he learned about ECX's inventory for the first time during the hearing. He asserted ECX maintained an "inventory of thousands of LG batteries in the state of Washington." ECX claimed that between September 2014 and October 2018 it sold approximately 9,500 LG batteries excluding LG batteries that were rewrapped as "Efest" batteries. In support of his reconsideration request, Eriksen submitted his counsel's declaration citing seven cases where a third party rewrapped LG batteries and then those batteries were sold in Washington State where they exploded and caused injuries. The declaration asserts LG knew third parties were rewrapping and reselling its batteries in the State of Washington.

ECX supported Eriksen's motion for reconsideration and asserted the additional jurisdictional discovery would target information about "LG Chem's knowledge of, and acquiescence in, the rewrapping and distribution of its batteries to e-cigarette retailors in the United States, and Washington State."

The trial court denied Eriksen's requests for reconsideration and for jurisdictional discovery. The trial court later granted ECX's request for entry of final judgment and certification of immediate appeal. Eriksen and ECX appeal the trial court's dismissal of their claims against LG, and denial of the requests for jurisdictional discovery and for reconsideration.

ANALYSIS

Specific Personal Jurisdiction

Eriksen and ECX claim Washington State courts have specific personal jurisdiction over LG for purposes of resolving their claims against it. We disagree and affirm the trial court.

This court reviews CR 12(b)(2) dismissals for lack of personal jurisdiction de novo.[2] We accept allegations in the complaint as true.[3] The plaintiff bears the burden of establishing a prima facie case that jurisdiction exists.[4]

"For a Washington court to exercise specific personal jurisdiction over a defendant, the plaintiff must allege that the defendant purposefully availed itself of the privilege of doing business in Washington, thus invoking the benefits and protections of our laws." [5] "Without any such allegation, exercising jurisdiction would not comport with due process."[6]

"Under Washington's long arm jurisdiction statute, RCW 4.28.185, personal jurisdiction exists in Washington over nonresident defendants and foreign corporations as long as it complies with federal due process."[7] The due process clause requires

---

[2] State v. LG Electronics, Inc., 186 Wn.2d 169, 176, 375 P.3d 1035 (2016), cert. denied, 137 S. Ct. 648, 196 L. Ed. 2d 522 (2017); Noll v. American Biltrite Inc., 188 Wn. 2d 402, 411, 395 P.3d 1021, 1026 (2017).
[3] Noll, 188 Wn.2d at 411.
[4] Noll, 188 Wn.2d at 411.
[5] Noll, 188 Wn.2d at 405.
[6] Noll, 188 Wn.2d at 405.
[7] Noll, 188 Wn.2d at 411.

"that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'"[8]

The United States Supreme Court and our State Supreme Court examine three elements to determine whether the exercise of personal jurisdiction satisfies due process. (1) There must be purposeful "minimum contacts" between the defendant and the forum state, (2) the plaintiff's injuries must arise out of or relate to the defendant's minimum contacts, and (3) the exercise of jurisdiction must be reasonable and consistent with notions of "fair play and substantial justice."[9]

Eriksen and ECX assert the trial court had personal jurisdiction because (1) the alleged facts establish LG purposefully availed itself of the privilege of doing business in Washington State when it placed its batteries in the stream of commerce with the expectation the batteries would end up in Washington, (2) Eriksen's injuries arose out of LG's contacts with Washington, and (3) the exercise of personal jurisdiction would not violate traditional notions of fair play and substantial justice.

"Specific personal jurisdiction analyzes the defendant's contacts with the forum state that are related to the plaintiff's claims and arose or existed at the time that the relevant event occurred."[10]  Specific personal jurisdiction requires purposeful minimum

---

[8] LG Electronics, 186 Wn.2d at 176 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting Shaffer v. Heitner, 433 U.S. 186, 218, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)).

[9] LG Electronics, 186 Wn.2d at 176-77 (quoting Grange Ins. Ass'n v. State, 110 Wn.2d 752, 758, 757 P.2d 933 (1988) (quoting Burger King, 471 U.S. at 472-78)).

[10] Noll, 188 Wn.2d at 412 (citing Goodyear Dunlop Tires Operations, SA v. Brown, 564 U.S. 915, 923-24, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).

contacts by the defendant with the forum.[11] "To establish purposeful minimum contacts, there must be some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws.'"[12]

"A foreign manufacturer…does not purposefully avail itself of a forum when the …unilateral act of a consumer or other third party brings the product into the forum state."[13] The "relationship must arise out of the contacts that the defendant itself creates with the forum,"[14] and cannot be based "on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[15]

Washington State courts utilize the stream of commerce theory from Justice Breyer's concurring opinion in J. McIntyre Machinery, Ltd. v. Nicastro.[16] "[W]here a foreign manufacturer seeks to serve the forum state's market, the act of placing goods into the stream of commerce with the intent they will be purchased by consumers in the forum state can indicate purposeful availment."[17] But, personal jurisdiction cannot be

---

[11] Noll, 188 Wn.2d at 412 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

[12] LG Electronics, 186 Wn.2d at 177 (quoting Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

[13] LG Electronics, 186 Wn.2d at 177 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)); Noll, 188 Wn.2d at 415.

[14] Noll, 188 Wn.2d at 414.

[15] Noll, 188 Wn.2d at 415 (citing Walden v. Fiore, 571 U.S. 277, 286, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014) (citing Burger King, 471 U.S. at 475)).

[16] 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011).

[17] LG Electronics, 186 Wn.2d at 177.

"based on the mere foreseeability that the product may end up in a forum state."[18] Personal jurisdiction may exist where a substantial volume of a foreign defendant's "sales took place in a state as part of the regular flow of commerce."[19] But, there must be evidence of "'something more,' such as special state related design, advertising, advice, or marketing."[20]

In State v. LG Electronics, Inc., our State Supreme Court determined that to establish purposeful availment in stream of commerce cases the plaintiff must show the defendant had actual knowledge and intended their product be incorporated into other products and sold in large quantities in Washington State.[21] The court affirmed this court's determination that the State alleged purposeful minimum contacts sufficient to establish personal jurisdiction by demonstrating LG Electronics dominated the global market, sold its product globally with the intent their product would reach Washington State, and intended to elevate the price of their products purchased in Washington State.[22] The court also determined the presence of millions of LG Electronics products in Washington State was attributable to its actions and was not a random act of a third party.[23]

Recently, in Noll v. Special Electric Company, Inc., this court remanded a case to the trial court to enter findings of fact because the record contained insufficient

---

[18] LG Electronics, 186 Wn.2d at 178.
[19] Noll, 188 Wn.2d at 414 (citing LG Electronics, 186 Wn.2d at 181).
[20] J. McIntyre, 564 U.S. at 889.
[21] 186 Wn.2d at 182.
[22] LG Electronics, 186 Wn.2d at 182.
[23] LG Electronics, 186 Wn.2d at 182.

information for this court to determine the issue of personal jurisdiction.[24]  On remand, the trial court determined "substantial evidence" supported the finding that the defendant had a substantial amount of sales in the United States and the State of Washington.[25]  This court determined that "Noll demonstrated a regular flow of Special Electric's asbestos into Washington State and that the presence of its product in Washington 'was not the result of chance or random acts of third parties,'" and "Special Electric was aware of CertainTeed's connection to Washington."[26]  It reversed the trial court's original dismissal for lack of personal jurisdiction.[27]

The facts of Death v. Mabry[28] are more similar to this case.  Death sued LG Chem for manufacturing a defective rewrapped battery in his e-cigarette that exploded and injured him.[29]  Death argued "that by indirectly placing these batteries into the stream of commerce LG Chem knew that its transactions could have consequences in Washington, and that this is enough to establish that it purposefully availed itself of the privilege of doing business here."[30]  LG Chem argued the trial court lacked specific personal jurisdiction because LG Chem did not authorize the company to rewrap its batteries, it did not manufacture the batteries to be used in e-cigarettes, and Death did not show "a single act it undertook to place products here."[31]  LG Chem also argued it

---

[24] Noll v. Special Electric Company, Inc., 9 Wn. App. 2d 317, 319, 444 P.3d 33 (2019).

[25] Noll, No. 77888-9-I, slip op. at 5-6 (Wash. July 13, 2020).

[26] Noll, slip op. at 6.

[27] Noll, slip op. at 6.

[28] 2018 WL 6571148 (Wash. Dec. 13, 2018).

[29] Death, 2018 WL 6571148 at 1.

[30] Death, 2018 WL 6571148 at 1, 4.

[31] Death, 2018 WL 6571148 at 4.

did not have a place of business, real estate, bank, mailing address, or phone number in the State of Washington.[32] The Unites States District Court for the Western District of Washington dismissed the claims against LG Chem for lack of specific personal jurisdiction because "Death has alleged only unilateral acts of an unidentified third party; he has not described one act by LG Chem. And that has not been enough to support the assertion of specific personal jurisdiction, even under a stream of commerce theory."[33] Here, the trial court determined Eriksen and ECX failed to allege LG had sufficient purposeful minimum contacts with Washington State. The trial court explained it was an "intervening act by another that [brought] the product into Washington."

Eriksen and ECX argue LG was aware that thousands of its batteries are rewrapped and sold in Washington State and it substantially profits from those sales. So, it should have reasonably anticipated or expected it to be haled into court in Washington State. Eriksen and ECX also argue the sale of LG's batteries is not a result of random, fortuitous, or attenuated contacts or a third party's actions. ECX notes that while LG claims it does not authorize the rewrapping or sale of its batteries for use in e-cigarettes, it does not prohibit others from doing so.

Like in Death, Eriksen and ECX do not allege that LG sold its products directly to Washington State consumers. Unless LG directed a third party to sell products in the State of Washington, this court only considers LG's actions. Because Eriksen and ECX do not allege LG sold its batteries directly to Washington State consumers, and

---

[32] Death, 2018 WL 6571148 at 1.
[33] Death, 2018 WL 6571148 at 4.

provides no evidence that LG directed third parties to market and sell its rewrapped batteries in Washington State, Eriksen and ECX have not shown that LG reasonably anticipated or expected to be haled into court in the State of Washington.

Next, Eriksen and ECX argue the large volume of rewrapped LG batteries flowing into Washington State through the stream of commerce is enough to establish minimum contacts. But, the inventory Eriksen and ECX provided does not show a targeted, regular flow of sales to Washington State.

ECX asserts a number of unsupported arguments. ECX argues,

> LG Chem maintains an interactive website, places labels on its batteries in English, and on information and belief designs its batteries to comply with applicable United States regulation, has put indemnification clauses into its contracts with its distributors and has liability insurance applicable to lawsuits in the United States and Washington.

The record does not contain evidence of an interactive website, an effort to comply with United States regulations, or contracts with indemnification clauses. Similarly, ECX argues LG engages in other business, research, design, manufacturing, and sells other products in the United States and Washington State. ECX has not provided sufficient evidence to support this argument.

ECX also claims a disclaimer written in English on LG's website demonstrates it is complicit in funneling batteries to Washington. This claim is also unsupported because ECX does not show the disclaimer demonstrates LG's intent to be in the e-cigarette market nor does it show the disclaimer is a form of marketing directed at Washington State consumers. While the disclaimer may show LG is aware that some people may improperly put its batteries into e-cigarettes, this showing does not satisfy

the requirements for purposeful availment because it only shows knowledge. And, purposeful availment requires knowledge plus intent.

Similarly, ECX argues LG had notice, knowledge, and the expectation its batteries were being used and injuring consumers in the United States and in Washington State because LG is involved in various state and federal lawsuits. To support this claim, ECX cites other cases involving LG. But, as previously discussed, knowledge is not enough to establish purposeful availment. Without an intentional act directing the batteries to Washington State, the personal availment prong of specific personal jurisdiction is not satisfied. Eriksen and ECX have not alleged the same quantum of facts to satisfy the intent requirement that the parties provided in LG Electronics or Noll.

Eriksen and ECX did not sufficiently allege, and there are not enough facts to establish, that LG purposefully directed its batteries to the State of Washington. Eriksen and ECX did not allege the "something more" that Justice Breyer articulated in J. McIntyre Machinery.[34] So, we cannot say that LG purposefully availed itself to personal jurisdiction with Washington State.

Because Eriksen and ECX's claim that LG purposefully availed itself of Washington State's jurisdiction fails and our analysis ends. We do not reach the second or third prong of the personal jurisdiction analysis of whether Eriksen's injury arose out of LG's contacts and whether it would offend notions of fair play and substantial justice to hale LG into court in Washington State.

---

[34] J. McIntyre Machinery, 564 U.S. at 889.

Jurisdictional Discovery

Eriksen and ECX argue the trial court abused its discretion in denying their request for jurisdictional discovery. They request remand and argue additional discovery will support jurisdiction.

We review the denial of a request for jurisdictional discovery for abuse of discretion.[35] The trial court abuses its discretion when it exercises it in a "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."[36] Trial courts have broad discretion to grant jurisdictional discovery where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.[37] "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."[38] We do not sustain that right where the plaintiff's claims are "based on little more than a hunch that it might yield jurisdictionally relevant facts."[39]

Here, the trial court explained it denied additional jurisdictional discovery because Eriksen and ECX did not plead with reasonable particularity the possible existence of sufficient minimum contacts between LG and Washington State or that LG

---

[35] Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 777, 819 P.2d 370 (1991); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3rd Cir. 2003).

[36] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775, 784 (1971).

[37] Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

[38] Toys "R" Us, 318 F.3d at 456.

[39] Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).

could reasonably foresee being haled into court in Washington State. Because we find no abuse of discretion, we affirm. Under a de novo standard of review, we might have reached a different result.

Motion to Reconsider

Eriksen argues the trial court abused its discretion when it denied his request for reconsideration based on newly discovered evidence of ECX's inventory. He argues ECX's inventory shows substantial volumes of LG batteries flow into the State of Washington.

We review the denial of a reconsideration request for abuse of discretion.[40] "[R]econsideration is warranted if the moving party presents new and material evidence that it could not have discovered and produced at trial."[41] "If the evidence was available but not offered until after that opportunity passes, the parties are not entitled to another opportunity to submit that evidence."[42]

In Go2Net, Inc. v. C I Host, Inc., we wrote, "A new trial may be granted on the basis of newly discovered evidence only if the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching."[43] This court affirmed the trial court's denial of a motion for

---

[40] Wagner Dev., Inc. v. Fid. & Deposit Co. of Maryland, 95 Wn. App. 896, 906, 977 P.2d 639, 645 (1999).

[41] Wagner Dev., 95 Wn. App. at 906; Go2Net, 115 Wn. App. 73, 60 P.3d 1245 (2003); CR 59(a)(4).

[42] Wagner Dev., 95 Wn. App. at 907.

[43] 115 Wn. App. 73, 88, 60 P.3d 1245 (2003).

reconsideration based on newly discovered evidence where the party produced the evidence the day before the trial court's hearing.[44]

Eriksen argues this case differs from Go2Net because he "only learned of ECX's inventory list when its counsel referenced it at the hearing on the motion to dismiss." LG argues Eriksen cannot meet the Go2Net factors. LG argues the inventory was not newly discovered evidence because ECX had records of the inventory, and Eriksen had previously served ECX with discovery requests for information about the supply of the Efest battery.

Because the inventory was available when the parties filed their other pleadings, and when the trial court held the hearing on the motion to dismiss, the trial court did not abuse its discretion in denying the motion for reconsideration.

## CONCLUSION

Because Eriksen and ECX do not sufficiently allege that LG has enough purposeful minimum contact with Washington State, and the trial court did not abuse its discretion in denying Eriksen and ECX's requests for jurisdictional discovery and reconsideration, we affirm.

_____
Leach, J.

WE CONCUR:

_____
_____
Chun, J.

[44] Go2Net, 115 Wn. App at 88-89.